Angelo MELO, Plaintiff,

v.

NATIONAL FUSE AND POWDER COM-
PANY, a corporation, Defendant.

Civ. A. No. 66-C-278.

United States District Court
D. Colorado.

March 1, 1967.

Benjamin E. Sweet, Denver, Colo., and Dwight L. King, Salt Lake City, Utah, for plaintiff.

Weller, Friedrich & Hickisch, by Arthur H. Downey, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

This matter is before the Court on the motion of defendant for a summary judgment. The plaintiff was allegedly injured in a mining explosion in Utah, and the defendant in this case, which is based on implied warranty, is the manufacturer of the blasting fuse which was allegedly the cause of plaintiff's injuries.

Defendant urges by the present motion that plaintiff entered into a settlement and stipulation of dismissal of an action in the United States District Court of Utah against the Trojan Powder Company, the seller and supplier of the blasting fuse, and that by making the settlement plaintiff released from liability all joint obligors, including the defendant in this case.

The threshold question is whether the plaintiff's settlement of his claim with Trojan Powder Company for $25,000 constituted a "release" or "discharge". A "release" is commonly defined as "the abandonment of a claim to the party against whom it exists; it is a surrender of a cause of action and may be gratuitous or for a consideration." 1 Harper & James, Law of Torts § 10.1 at p. 711 (1956). See also Black's Law Dictionary, p. 1453 (4th ed. 1957); Prosser, Law of Torts, § 46 at p. 269 (3d ed. 1964); Pellett v. Sonotone Corp., 26 Cal.2d 705, 160 P.2d 783, 160 A.L.R. 863 (1945).

There is apparently no written document embodying the settlement of the parties in Utah, other than the "Stipulation, Motion and Order of Dismissal" which appears in the record. It is fundamental, however, that an effective release can be consummated without resort to a particular form of words, for "all that is necessary is that the words show an intention to discharge." Gordon v. Vincent Youmans, Inc., 358 F.2d 261, 263 (2d Cir. 1965). We believe that the written stipulation in this case clearly falls within the above definition of a "release". It provided that:

> It is hereby stipulated by and between the parties hereto, through their respective attorneys, that the above entitled action, *having been fully settled, may be dismissed with prejudice and on the merits.* (Emphasis added).

The order of the federal court in Utah, entered pursuant to the stipulation, provided that the "action be * * * dismissed with prejudice on the merits." One who has, for a consideration, voluntarily dismissed his action against another with prejudice and on the merits has abandoned his claim and effected a release. Cf. Jenkins v. Southern Pac. Co., 17 F.Supp. 820, 830 (S.D.Cal.1937).

The question of what effect is to be given to the release in this case is governed by the law of Utah, where the settlement agreement was made and where the alleged injury occurred. See, e. g., Bowles v. Zimmer Mfg. Co., 277 F.2d 868, 76 A.L.R.2d 120 (7th Cir. 1960). Utah has adopted the Uniform Joint Obligations Act, 1953 U.C.A. § 15–4–1 et seq., and that legislation is determinative of the present issues. Plaintiff's counsel took the position at the time of argument on this motion that the Act does not apply to joint tortfeasors. This contention is clearly negatived by the specific language of § 15–4–1. (Whether an action based on implied warranty is contractual, or sounds in tort, is not significant here, for in either case defendant's liability would be that of a joint obligor.)

The effect of a release of one obligor on the liability of a co-obligor is set forth in § 15–4–4 as follows:

> Subject to the provisions of section 15–4–3, the obligee's release or discharge of one or more of several obligors, or of one or more of joint or of joint and several obligors, shall not discharge co-obligors against whom the obligee in writing and as part of the same transaction as the release or discharge expressly reserves his rights; and in the absence of such a reservation of rights shall discharge co-obligors only to the extent provided in section 15–4–5.

Section 15–4–5 has no effect in the present case, but 15–4–3 is pertinent and controlling.

▓▓ The harsh common law doctrine that the release of one joint obligor automatically effected the release of all has thus been tempered by the Utah legislature, to the extent that one can avoid this result by an express written reservation of rights against the co-obligors. It is clear, however, that even under the Uniform Act, the release of one joint obligor will still release all *"unless* it contains a reservation of right to the contrary." Annot., 73 A.L.R.2d 403, 408 (1960). See also the following cases which applied the law of New York, which also has the Uniform Act: Rector, Church Wardens and Vestrymen of St. James Church v. City of New York, 261 App.Div. 614, 26 N.Y.S.2d 762 (1941); Rushford v. United States, 92 F.Supp. 874, 877 (N.D.N.Y.1950); Western Newspaper Union v. Woodward, 133 F.Supp. 17, 25 (W.D.Mo.1955).

▓▓ This construction of the Act is also strongly implied in the decisions in which Utah law has been applied. For example, in Greenhalch v. Shell Oil Co., 78 F.2d 942 (10th Cir. 1935), the injured plaintiff executed an agreement releasing and discharging one obligor, and the agreement contained a reservation of rights which would still permit him to sue "any physician or surgeon for malpractice or neglect." While the court recognized the plaintiff's right, under the Uniform Act, to make such a reservation, the court held that in the later suit against Shell Oil Company the prior release operated as an absolute defense. This result was reached because the release had reserved no rights against Shell Oil Company. In the present case the settlement stipulation and order of dismissal contained no reservation of rights against *any* party, and it would therefore follow *a fortiori* that no action can be maintained against the National Fuse Company.

The general rule, that a release of one obligor without an express written reservation discharges co-obligors, is also recognized in Dawson v. Board of Education, 118 Utah 452, 222 P.2d 590 (1950); Green v. Lang Co., 115 Utah 528, 206 P.2d 626 (1949) (where there was a covenant not to sue, rather than a release); United States v. First Security Bank of Utah, 208 F.2d 424 (10th Cir. 1963). See also Restatement, Torts § 885.

Plaintiff does not contend that there is any genuine issue as to any material fact. The only case cited to support his position is Bennett Motor Co. v. Lyon, 14 Utah 2d 161, 380 P.2d 69; the facts and legal discussion in that case reveal it to be quite inapposite to the instant problem.

The conclusion that plaintiff's settlement with Trojan Powder Company operated as a complete satisfaction of his claim is further buttressed by the fact that "the damage suffered was incapable of exact measurement in dollars; the sum received was substantial." Greenhalch v. Shell Oil Co., supra, 78 F.2d at p. 944. See also, 1 Harper & James, § 10.1 at p. 712. Plaintiff received $25,000 for a claim for which his medical expenses amounted to only approximately $2,500. (Pre-trial Order p. 2).

Having received a substantial amount from Trojan Powder Company in full settlement, and having dismissed his action against that company on the merits

and with prejudice but *without reserving any rights*, plaintiff thus released the present defendant. The motion for summary judgment is well taken. It is therefore

Ordered that defendant's motion for summary judgment be, and hereby is, granted.